CHARLES W. STARKEY *vs.* WILLARD S. LEWIN, et al.

Aroostook.   Opinion March 24, 1919.

*General rule as to the refusal of court to give certain requested instructions being subject to exceptions.*

Questions, the answers to which involve the conclusions the jury is to find from all the evidence are objectionable and should be excluded.

Where an erroneous instruction is given or a correct instruction is refused, if the erroneous instruction or refusal may have misled the jury, and the court is not clearly satisfied that under a correct instruction a different verdict could not have been given, or, if given, could not be permitted to stand, exceptions thereto must be sustained.

Action of assumpsit to recover the value of certain goods delivered to a person other than defendant Lewin.   Defendants filed plea of general issue.   Verdict for plaintiff in the sum of $430.   Defendant filed motion for new trial; also exceptions to certain rulings of presiding Justice.   Exceptions sustained.

Case stated in opinion.

*Doherty & Tompkins,* for plaintiff.

*Pierce & Madigan, and Shaw & Thornton,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, WILSON, DEASY, JJ.

WILSON, J.   This is an action of assumpsit to recover for certain supplies delivered by the plaintiff to the defendant Horton, who was engaged in conducting a lumber operation for defendant Lewin.   The jury found a verdict against the defendant Lewin for the sum of four hundred and thirty dollars.

The case comes before this court on exceptions of the defendant Lewin to the admission of certain testimony and to a certain part of the Judge's charge, and to the refusal of the presiding Justice to give a certain requested instruction, and also on motion for a new trial on the usual grounds.   We shall consider only the exceptions.

The only issue was, did the defendant Lewin promise to pay for the goods delivered to Horton; or to put it in another form, on whose credit were the goods sued for delivered.   If upon an original promise of Lewin before delivery, as claimed by the plaintiff, then Lewin was, of course, liable; but if in any part upon the credit of Horton, Lewin was not liable, the alleged promise, if any was made, being an oral one.   20 Cyc., p. 165c.   Chitty on Contracts *442.

In the course of the trial the plaintiff's counsel asked him the following question: "Upon the strength of whose credit did you deliver these goods?".   Against the defendant Lewin's objection he was permitted to answer: "I gave them on Mr. Lewin's credit." To this ruling the defendant Lewin excepted on the ground that it involved the issue which the jury were to determine from all the evidence.

We are of the opinion that the defendant's contention is correct in principle and in accord with the authorities, and that the correct rule is laid down in *Walker* v. *Moors*, 125 Mass., 352.   It would have been permissible as held in *Folsom* v. *Skofield*, 53 Maine, 171, to have inquired of the plaintiff as to whom he intended to give credit when he delivered the goods, but to inquire on whose credit they were delivered involved not only his own intent, but the defendant Lewin's acquiescence, which was the very point in dispute for the jury to determine.   *Pope* v. *Medill*, 12 N. Y. S., 306; *Drew* v. *Kenfer*, 30 N. Y. S., 733.

However, since the real issue, as stated above, was, did the defendant Lewin promise to pay for these goods at all, except upon conditions which he claims were never fulfilled, we deem more prejudicial

to him the refusal of the court to give the following requested instruction: "The plaintiff cannot recover upon the ground that Lewin received the benefit of the goods sold by Starkey, unless you find that Lewin agreed to pay for them;" or to state the necessary inference to be drawn from the refusal: If you find that Lewin received the benefit of the goods delivered to Horton, Lewin is liable, even though he did not agree to pay for them.

The court saying: "I cannot give you that in the face and eyes of the Colbath Seed case" (referring to 112 Maine, 277) "I call your attention again to the fact," and after again reading the requested instruction said: "I must decline to give you that statement." To appreciate the probable mischievous effect on the jury, it is only necessary to state briefly the contentions of the parties.

The plaintiff's contention is, that prior to the delivery of the goods sued for, the defendant Lewin over the telephone and in conversation on the street told the plaintiff to let Horton have such goods as he wanted for his operation and he, Lewin, would pay for them. It was also contended by counsel that liability on the part of Lewin might also arise from the furnishing of the goods to Horton, since Horton was at the time engaged in conducting a lumbering operation for Lewin and Lewin was indirectly, at least, benefitted thereby.

The defendant Lewin's contention is that he only agreed to pay for the first bill of goods delivered to Horton to enable him to get started on his contract, which goods it is admitted have already been paid for and are not a part of the goods sued for in this action; and that the conversation on the street went no further than that, while he would not be personally responsible for Horton's bills, if the plaintiff would present bills every thirty days and Horton would approve and order him to pay them, and there was money due Horton under his contract, he would see that they were paid. No contention was made by him, or his counsel, that, if any promise by him was made, it was a collateral one, and, therefore, was within the statute of frauds. In short, his sole and entire defense was that he made no such promise as claimed by the plaintiff.

There was no evidence in the case of any independent promise by Lewin to pay for the goods in consideration of any possible benefits resulting to him, except the alleged original promise to pay before delivery, which, if made as alleged by the plaintiff, needed no accruing benefits to render it binding, even though not in writing.

The court, however, in its charge called the attention of the jury to the claim of the plaintiff that the benefit received by Lewin from his employee or contractor having the necessary supplies for his operation might be a sufficient consideration for a promise that would be outside the Statute of Frauds under the rule laid down in the *Colbath Seed Case,* 112 Maine, 277. And although in the course of the instructions to the jury upon this point the words promise and promissor were used as applied to the defendant Lewin, no instructions were given as to whether the indirect benefits resulting from the relations of the parties in this case were sufficient to form a consideration for any promise to pay under the doctrine laid down in the Colbath Seed case. See *Hardware Co.* v. *Goodman,* 68 W. Va., 462. Nor were they instructed except by inference that in such cases an express promise was necessary.

While the refusal to give the requested instruction was no doubt due to some inadvertence, we cannot help but feel that the jury notwithstanding the prior instructions of the court, may have acted upon the only inference to be drawn from the refusal, viz: That if any benefits were received by the defendant Lewin from the furnishing of these supplies to Horton, no promise or agreement to pay on his part was necessary to render him liable in this action; and therefore the jury may have failed to give due consideration to the real defense set up by Lewin, that he never agreed to be responsible for all goods delivered to Horton.

While we cannot say that the jury would have arrived at a different verdict if the requested instruction had been given, they might. The defendant Lewin contends that the evidence discloses that the goods were not delivered solely on his credit, nor even on his credit at all. That they were originally charged on the plaintiff's books to the Seymour Horton Lumber Account, and that his name did not appear on the plaintiff's books until after August 1st, 1916, while the account began in January, 1916; that when his name was inserted on the books, as the bookkeeper testifies, it was done on the plaintiff's order "to make it stronger" and that when the bills were sent out they were made out in the name of and given to the defendant Horton as appears by the exhibits in the case.

The preponderance of the evidence, we think, is not overwhelming either way and would warrant a verdict for either party according

as the testimony of the witnesses was believed by the jury. The defendant Lewin, therefore, has a right to consider himself aggrieved by the refusal to give the requested instruction. *Page* v. *Alexander*, 84 Maine, 83, 84.

It is true that when it is clear to the court that no other verdict could be rendered under correct instructions, exceptions will not be sustained to erroneous rulings. We think, however, the correct rule is found in *Noyes* v. *Shepherd*, 30 Maine, 178, 179; *Thatcher* v. *Jones*, 31 Maine, 534; *Hopkins* v. *Fowler*, 39 Maine, 568, 570; *King* v. *Ward*, 74 Maine, 349, 351; *Page* v. *Alexander*, 84 Maine, 83, 84; *State* v. *Houlehan*, 109 Maine, 285. If the erroneous instruction or refusal *may* have misled the jury, and the court is not clearly satisfied that under correct instructions a different verdict could not have been given, or if given, could not be permitted to stand, the exceptions should be sustained.

Entry must be,

*Exceptions sustained.*